**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ramada Worldwide Inc.,

Plaintiff and Counterclaim Defendant,

v.

TCBH, Inc. and Alison Chang,

Defendants and Counterclaim Plaintiffs.

File No. 24-CV-0955 (JMB/DJF)

**ORDER**

---

Anthony J. Novak, Larson King LLP, St. Paul, MN; Bryan P. Couch (*pro hac vice*), Connell Foley LLP, Roseland, NJ; and Willian Charles Gattoni, Jr. (*pro hac vice*), Connell Foley LLP, Newark, NJ; for Plaintiff Ramada Worldwide Inc.

Steven J. Weintraut, Siegel Brill, PA, Minneapolis, MN, for Defendants TCBH, Inc. and Alison Chang.

---

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 67, 72.) As explained below, the Court denies Defendants' motion and grants Ramada's motion.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff Ramada Worldwide Inc. (Ramada) is widely known as a hotelier. (Doc. No. 76 ¶ 4.) On December 31, 2021, Ramada entered into a Franchise Agreement (FA) with Defendant TCBH, Inc. (TCBH) for the operation of a 187-room Ramada hotel in Eagan, Minnesota for a term of fifteen years. (*Id.* ¶¶ 6, 10.) Defendant Alison Chang, who is a majority owner of TCBH, executed the FA on behalf of TCBH. (*Id.* ¶¶ 3, 7.) Under the FA, Defendants agreed to make periodic payments to Ramada for royalties, system

assessment fees, taxes, interest, and other fees (Recurring Fees). (*Id.* ¶¶ 11–14.) They were also required to disclose to Ramada the amount of gross room revenue (to establish the amount of Recurring Fees) and other financial information. (*Id.* ¶¶ 15–16.)

At about the same time as they entered into the FA, Ramada and Defendants executed an addendum to the FA pursuant to the Minnesota Franchise Investment Law (Minnesota Addendum). (*Id.* ¶ 9.) Chang also provided Ramada with a guaranty of TCBH's obligations under the FA. (*Id.* ¶¶ 28–32.) The Guaranty provided that, in the event of default under the FA, Chang would make any payment and perform any obligation under the FA and that Chang would also pay the costs incurred by Ramada in enforcing its rights under the Guaranty or the FA. (*Id.* ¶¶ 29–30.) Chang also executed a Development Incentive Note on TCBH's and her own behalf for $467,500.00, the principal of which would be forgiven by one-fifteenth for each year of the fifteen-year term. (*Id.* ¶¶ 33–38.) The Note provided that, if the FA was terminated for any reason, the Note's outstanding principal balance would be immediately due. (*Id.* ¶ 35.)

Just one year into the fifteen-year term of the FA, Ramada's and Defendants' relationship soured. In January 2023, Ramada advised TCBH that it had breached the FA; Ramada advised that TCBH owed $111,900.73 in outstanding Recurring Fees and that, if it did not cure the default within sixty days, the FA may be subject to termination. (*Id.* ¶ 39.) Four months later, in April 2023, TCBH refused Ramada's attempt to conduct a quality-assurance inspection of the hotel. (*Id.* ¶ 40.) On May 4 and May 12, 2023, Ramada sent letters advising of the impending termination of the FA due to Defendants' failure to cure TCBH's default under the Recurring Fees provision of the FA and due to TCBH's

breaches of the FA by, among other things, refusing Ramada's attempt at an inspection. (*Id.* ¶¶ 41–42.) On August 3, 2023, Ramada terminated the FA and demanded that Defendants pay $1,250,743.15 in actual damages, all outstanding Recurring Fees through the date of termination, and the outstanding principal balance of the Note. (*Id.* ¶ 43.)

Defendants never paid, and Ramada filed suit, asserting six claims. (*See* Doc. No. 14 [hereinafter, "Am. Compl."].) Count One seeks judgment ordering TCBH to provide an account to Ramada of all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception of the FA to the day of judgment. (*Id.* ¶¶ 37–40.) Count Two alleges that TCBH is obligated to pay Ramada $1,250,743.15 in actual damages for premature termination of the FA. (*Id.* ¶¶ 41–46.) Count Three alleges that TCBH is obligated to remit $206,573.53 in outstanding recurring fees to Ramada. (*Id.* ¶¶ 47–50.) Count Four alleges that TCBH's failure to pay $206,573.53 in recurring fees constitutes unjust enrichment. (*Id.* ¶¶ 51–53.) Count Five alleges that, under the terms of the Guaranty, Chang is liable to Ramada for $1,250,743.15 for TCBH's actual damages and for $206,573.53 in outstanding recurring fees. (*Id.* ¶¶ 54–57.) Count Six alleges that Chang failed to pay Ramada the Note's outstanding principal sum of $436,333.33 at the time of the termination of the FA. (*Id.* ¶¶ 58–62.)

Defendants asserts two counterclaims. Counterclaim 1 alleges that section 18.2 of the FA and Ramada's attempts to recover $1.25 million "in liquidated damages and/or termination penalties" violates state franchise law. (Doc. No. 33 ¶¶ 7–9.) Counterclaim 2 alleges that Ramada's attempt to recover $1.25 million breaches section 17.6.3 of the FA, as amended by the Minnesota Addendum, and breaches the Guaranty. (*Id.* ¶¶ 10–12.)

## DISCUSSION

Both parties now move for summary judgment. For the following reasons, the Court denies Defendants' motion and grants Ramada's motion.

As a threshold matter, the Court observes that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law determines which facts are "material" and which are irrelevant: material facts are those whose resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive the motion, a non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). As is normally the case in a summary judgment motion, all justifiable inferences are to be drawn in the non-moving party's favor, *Anderson*, 477 U.S. at 255, meaning that the Court views the record in the light most favorable to Defendants when considering Plaintiff's motion, and in the light most favorable to Plaintiffs when considering Defendants' motion. *See, e.g.*, *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012). The Court begins with Defendants' motion and then addresses Plaintiff's motion.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment in their favor on both of their counterclaims. The Court addresses each counterclaim in turn.

### A. Violations of State Franchise Law

Defendants seek summary judgment on Counterclaim 1 for Ramada's alleged violations of the Minnesota Franchise Act (MFA), which Defendants believe arise out of Ramada's late addition of section 18.2 of the FA and Ramada's attempts to recover $1.25 million from Defendants. Specifically, Defendants argue that Ramada violated the MFA in the following three ways: (1) by discriminating against Defendants compared to other franchisees (Doc. No. 69 at 29–31); (2) by including an illegal liquidated damages provision and termination penalty in the FA (Doc. No. 69 at 32–35); and (3) by failing to include the "Termination Penalty" in the copy of the FA that Ramada provided to Defendants as an attachment to the FDD (Doc. No. 69 at 39). In response, Ramada claims that it seeks to recover only actual damages—not liquidated damages or a termination penalty—for Defendants' premature termination of the FA. (Doc. No. 83 at 7.)

***1. Illegal Discrimination***

Defendants argue that Ramada's termination of the FA constitutes illegal discrimination. However, because the record does not include any evidence that Ramada treated Defendants any differently than other franchisees in Minnesota, the Court denies Defendants' motion for summary judgment in their favor on Counterclaim 1.

Minnesota Statutes section 80C.14, subdivision 1, provides that "[n]o person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice in contravention of such rules as the commissioner may adopt defining as to franchises the words 'unfair and inequitable.'" Minnesota Administrative Rule 2860.4400 lists various unfair practices, including "discriminat[ing] between franchisees in the charges offered or made for royalties, goods, services, equipment,

rentals, advertising services, or in any business dealing, unless any classification of or discrimination between franchisees is based on franchises granted at different times, geographic, market, volume, or size differences, costs incurred by the franchisor, or other reasonable grounds." Minn. R. 2860.4400(B).

In support of their argument that Ramada discriminated against them, Defendants compare what Ramada sought to recover from them (projected gross revenues for more than thirteen years) with what Ramada sought to recover from other terminated franchisees (actual average monthly Recurring Fees for a maximum of thirty-six months). Though these amounts are different, Defendants do not account for the fact that franchise agreements in other states are not subject to the liquidated damages prohibition set forth in Rule 2860.4400. Pursuant to Rule 2860.4400, differential treatment based on "geographic, market, volume, or size differences . . . or other reasonable grounds" is not unfair or illegal discrimination. Minn. R. 2860.4400(B). The Court cannot conclude that Ramada discriminated against Defendants absent some argument and evidence that Ramada sought less than the full remaining term in damages from a terminated franchisee in the same geographic location as Defendants or otherwise subject to Rule 2860.4400 or a similar rule.

In short, the Court concludes that any differential treatment of Defendants resulted from differences in state law, not unfair discrimination.

***2. Illegal Liquidated Damages and Illegal Termination Penalty***

Defendants also argue that section 18.2 of the FA constitutes an illegal liquidated damages provision and an illegal termination penalty under the MFA. (Doc. No. 69 at 32–35.) Again, the Court disagrees.

Minnesota Administrative Rule 2860.4400(J) provides that it is unfair and inequitable to "require a franchisee . . . to consent to liquidated damages [or] termination penalties." The parties agree that this Rule prohibits Ramada from recovering liquidated damages or a termination penalty, but they disagree on the proper characterization of the $1.25 million Ramada seeks to recover under section 18.2 of the FA. In *Days Inn Worldwide, Inc. v. SBSB, LLC*, No. 08-CV-6474 (JRT/LIB), 2010 WL 3546958 (D. Minn. Sep. 7, 2010), a franchisee argued that plaintiff hotelier could not recover what it defined as "actual damages" because the hotelier was effectively seeking to recover "liquidated damages," which are barred by the MFA. *Id.* at *4. The court concluded that the hotelier was not seeking liquidated damages, but, rather, "other contractual damages, such as damages for lost profits." *Id.* at *5 (quoting *Holiday Hosp. Franchising, Inc. v. H-5, Inc.*, 165 F. Supp. 2d 937, 941 (D. Minn. 2001)). The MFA did not prohibit the hotelier from seeking actual damages—including lost profits—as a consequence of the franchisee's breach of the license agreement. Noting that a fact dispute remained "as to the proper calculation of those damages," the court denied the defendant's motion. *Id*. at *6.

Here, as in *Days Inn*, the Court similarly concludes that Ramada may recover actual damages resulting from Defendants' breach.[1] At trial, Ramada may seek to prove actual

[1] To be sure, Ramada asserts that its claimed amount of $1.25 million is not a termination penalty or an amount of liquidated damages, but instead is an amount that acts as a place holder for an as-yet undetermined amount for thirteen years of lost income.

damages incurred as a result of Defendants' breach, including admissible expert testimony to assist the jury's determination of any appropriate amount of actual damages.[2]

### ***3. Failure to Disclose in the Franchise Disclosure Document***

Finally, Defendants argue that Ramada violated the MFA by adding section 18.2 to the FA without disclosing this addition to Defendants. The Court is unconvinced by this argument and concludes instead that the addition of section 18.2 did not violate the MFA because section 18.2 had no impact on Ramada's legal ability to seek actual damages.

Minnesota Statutes section 80C.13, subdivision 1, prohibits a franchisor from communicating "any untrue statement of a material fact." Minnesota Administrative Rule 2860.4500 defines a "false, fraudulent, or deceptive practice" as including when a franchisor misrepresents

> that the franchise agreement and all of its obligations is or are embodied in one or several documents presented to, made available to, or executed by the prospective franchise when, in fact, the execution of additional documents or the giving by the franchisee of additional consideration is required to obtain the franchise or that execution of some of the documents is not related to or necessary for the acquisition of the franchise.

Minn. R. 2860.4500D(2).

---

[2] Defendants also advance the argument that Ramada's reference to the $1.25 million as "liquidated damages" in its internal documentation definitively shows that they are seeking liquidated damages. However, simply referring to this amount as "liquidated damages" at some point is not dispositive. *See Holiday Hosp. Franchising, Inc.*., 165 F. Supp. 2d at 941 (concluding that a contractual provision setting forth a method for calculating actual lost profits is not a liquidated damages clause, despite its "liquidated damages" label); *see also Lagoon P'rs, LLC v. Silver Cinemas Acquisition Co.*, 999 N.W.2d 113, 119 (Minn. App. 2023) ("The fact that the parties have designated the sum to be paid as liquidated damages is not controlling or conclusive. Rather, courts must ascertain whether payment stipulated is in truth liquidated damages or a penalty." (citation modified)).

Initially, it is not clear whether Rule 2860.4500 allows franchisees to sue franchisors for false, fraudulent, or deceptive practices. In *Randall v. Lady of America Franchise Corp.*, 532 F. Supp. 2d 1071 (D. Minn. 2007), for example, the court noted that it had "doubts about whether Rule 2860.4500 can be remedied through civil suits by franchisees" because although "a franchisor may be held liable to a franchisee for violations for rules promulgated under the Minnesota Franchise Act," Rule 2860.4500 by its terms simply defines the term "false, fraudulent, or deceptive practice" within the meaning of Minnesota Statutes sections 80C.12 and 80C.13. *Id.* at 1081. The court in *Randall* assumed, without deciding, that franchisors who engage in "false, fraudulent, or deceptive practices" can be held liable for those practices in an action brought by franchisees." *Id.*

This Court similarly assumes, without deciding, that franchisees may hold franchisors liable for false, fraudulent, or deceptive practices. However, the Court concludes that the actions Defendants allege here do not rise to the level of a "false, fraudulent, or deceptive practice" under the MFA. Section 18.2 provides as follows:

> The parties acknowledge that liquidated damages and termination penalties are prohibited under Minnesota law. However, you acknowledge that, in the event of a premature termination of this Agreement, you remain liable to us for any and all damages, losses, costs, and expenses incurred by us which would have otherwise been payable for and during the remainder of the unexpired Term.

(Doc. No. 14-1 at 29.) Section 18.2 does not create any new obligation—it merely states that Ramada can recover actual damages, which would have been true under the FA even if section 18.2 had not been added. *See, e.g.*, Restatement (Second) of Contracts § 346 (A.L.I. 1981) ("Every breach of contract gives the injured party a right to damages against

the party in breach, unless the contract is not enforceable against that party, as where he is not bound because of the Statute of Frauds."). Indeed, although the MFA precludes liquidated damages for premature termination of a franchise agreement, "there is no provision of Minnesota law or the contract between the parties which prevents [a franchisor] from seeking other contractual damages, such as damages for lost profits." *Holiday Hosp. Franchising, Inc.*, 165 F. Supp. 2d at 940 (citation omitted). Thus, because section 18.2 does not create any new contractual obligations and because Ramada would have been able to recover actual damages with or without the presence of section 18.2, the addition of 18.2 was not "false, fraudulent, or deceptive."

Therefore, the Court denies Defendants' motion as to Counterclaim 1.

**B. Breach of Contract**

Defendants also move for summary judgment in their favor on Counterclaim Two—for breach of contract—arguing that Ramada seeks liquidated damages and a termination penalty in violation of the MFA, which constitutes a breach of the FA. (Doc. No. 69 at 39.) Defendants argue that, because section 18.2 constitutes both a liquidated damages provision and a termination penalty, Ramada breached section 17.6.3 of the FA, which prohibits Ramada from "requiring the franchisee to consent to liquidated damages, termination penalties or judgment notes."

The Minnesota Addendum adds the following language to section 17.6.3 of the FA:

> Minnesota Statutes, Section 80C.21 and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside Minnesota, requiring waiver of a jury trial, *or requiring the franchisee to consent to liquidated damages, termination penalties or judgment notes*. Nothing in the

> Franchise Disclosure Document or this Franchise Agreement can abrogate or reduce any of your rights as provided for in Minnesota Statutes, Chapter 80C, or your rights to any procedure, forum or remedies provided for by the laws of Minnesota.

(Doc. No. 70-5 at 48 (emphasis added).) This language does not create a new contractual obligation—it simply incorporates an existing statutory obligations and records the parties' agreement to abide by them. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 835 (Minn. 2012) (concluding that the promise to properly classify work in accordance with U.S. Department of Labor criteria and to pay the prevailing wage to employees "was a general promise to comply with the law, which does not confer upon AGS employees the right to enforce the law" (citing *Astra USA, Inc. v. Santa Clary Cnty., Cal.*, 563 U.S. 110, 118 (2011))); *see also In Re R.M. Kliment & Frances Halsband, Architects*, 821 N.E.2d 952, 954–55 (N.Y. 2004) (concluding that a promise to comply with applicable and relevant provisions of the building code "may have been a particular bargained-for result," but "[m]aking such ordinary obligations express terms of an agreement does not . . . convert a malpractice action into a breach of contract action").

Therefore, the Court concludes that section 18.2 simply preserves Ramada's right to seek actual damages (which it is entitled to do under Minnesota law). Because simply referencing rights under Minnesota Law did not create a new contractual obligation, the Court denies Defendants' motion as to Counterclaim 2.

### C. Recission or Attorney Fees[3]

Defendants assert that they are entitled to recission or, alternatively, that they are entitled to recover their damages, attorney fees, and costs. *See* Minn. Stat. § 80C.17, subd. 1 ("A person who violates any provision [of the MFA] . . . shall be liable to the franchisee . . . who may sue for damages caused thereby, for rescission, or other relief as the court may deem appropriate."), subd. 3 ("Any suit authorized under this section may be brought to recover the actual damages sustained by the plaintiff together with costs and disbursements plus reasonable attorney's fees."). However, in light of the ruling above that Ramada has not violated the MFA, Defendants have no basis for rescission or attorney fees. Therefore, the Court denies Defendants' motion in this regard.

## II. RAMADA'S MOTION FOR SUMMARY JUDGMENT

### A. Breach of the Franchise Agreement (Counts One, Two, and Three)

Ramada argues that Defendants breached the FA by failing to perform the following three obligations: (1) report its revenues to Ramada and failing to maintain financial records; (2) operate the Facility for the full fifteen-year term; and (3) make recurring payments. At the hearing, Defendants conceded to breaching the FA. Defendants further conceded that the cyberattack, which took place in September 2022 and lasted for only three days, had no substantial impact on Defendants' failure to report revenue. The Court

[3] Defendants have withdrawn their motion for summary judgment seeking attorney fees pursuant to section 17.4 of the FA, but they are seeking to recover attorney fees pursuant to Minnesota Statutes, section 80C.17.

therefore grants Ramada's Motion for Summary Judgment as to liability on Counts One, Two, and Three.

**B. Breach of the Guaranty (Count Five)**

Ramada claims that Chang breached the Guaranty because she has not paid Ramada any amount since the termination of the FA. Again, Defendants concede that they breached the guaranty. The Court therefore grants Ramada's motion as to liability on Count Five.

**C. Breach of the Development Incentive Note (Count Six)**

Ramada also claims that Defendants breached the Development Incentive Note by failing to pay the remaining principal balance of $436,333.33. Here, too, Defendants concede that they breached the Note. Furthermore, the Note provides that it shall be accelerated if "a termination of the Franchise Agreement between Maker and Holder occurs for any reason." (Doc. No. 14-1 at 54.) The Court therefore grants Ramada's motion as to liability and damages on Count Six.

**D. Attorney Fees**

Ramada requests permission to apply for an award of attorney fees and costs pursuant to section 17.4 of the FA and the Note, both of which included provisions for attorney fees. The FA provides that "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Doc. No. 75-1 at 26.) The Note similarly provides that "[i]f this Note is collected by or through an attorney at

law, the Holder shall be entitled to collect reasonable attorney's fees and all costs of collection." (*Id.* at 55.)

The Minnesota Supreme Court draws an "important distinction[] between fee requests based on a statute and those based on a contract." *United Prairie Bank – Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 62 (Minn. 2012). A claim for contractual indemnity, including a request for money damages in the form of attorney fees, "is a legal claim with an attendant right to a jury trial under Article I, Section 4 of the Minnesota Constitution." *Id.* at 63. Ramada seeks attorney fees based on a contract. Because the nature of Ramada's claim is contractual and the remedy sought is legal, Defendants are entitled to a jury trial on attorney fees under Article I, Section 4 of the Minnesota Constitution. *See id.* Furthermore, Ramada has not disputed that *United Prairie Bank* applies to the attorney fees they seek in this case. (*See* Doc. No. 83.) The Court therefore denies Ramada's request to submit an application for an award of attorney fees and costs in this matter.

**E. Defendants' Counterclaims**

Ramada's motion concerning Defendants' Counterclaims 1 and 2 mirrors Defendant's motion. For the reasons previously discussed above in sections I.A and I.B, namely that Ramada is seeking only actual damages resulting from premature termination of the FA and that Minnesota law allows parties to seek damages for lost profits, the Court grants Ramada's motion as to both Counterclaims.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants TCBH, Inc.'s and Alison Chang's Motion for Summary Judgment on their Counterclaims (Doc. No. 67) is DENIED.

2. Plaintiff Ramada Worldwide Inc.'s Motion for Summary Judgment (Doc. No. 72) is GRANTED.

   a. The Court grants summary judgment in Plaintiff's favor on Count Six, and Plaintiff shall recover from Defendants jointly and severally an award of $602,021.93, which comprises $436,333.33 for the outstanding principal balance of the Development Incentive Note plus prejudgment interest through September 11, 2025 in the amount of $165,688.60.

   b. The Court grants summary judgment in Plaintiff's favor on the issue of liability only on Counts One, Two, Three, and Five.

   c. Count Four shall be DISMISSED AS MOOT, WITHOUT PREJUDICE.

   d. Defendants' Counterclaims are DISMISSED WITH PREJUDICE.

3. Final judgment will be entered pending the determination of the amount of actual damages and attorney fees and costs.

Dated: September 29, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court